UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARTFORD FIRE INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>TEMPUR-SEALY INTERNATIONAL, INC., et al.,<br><br>    Defendants. | Case No. 14-cv-01661-HSG<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 53, 64 |

Pending before the Court are the parties' cross-motions for summary judgment. For the reasons stated below, Plaintiff's motion is DENIED and Defendants' motion is GRANTED.

## I. BACKGROUND

The following material facts are not in dispute.

### A. Insurance Policies

Plaintiff Hartford Fire Insurance Co. issued nine comprehensive general liability insurance policies to Defendants Tempur-Sealy International, Inc. and Tempur-Pedic North America, LLC, covering the time period from December 31, 2004 to March 1, 2013 ("Policies").[1] *See* Dkt. No. 56 ("Maynard Decl."), Exs. 1-9. The "Insuring Agreement" section of the Policies reads:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

Section I ¶ 1(a).

---

[1] The parties agree that any variations in language across the Policies are not material and do not affect the Court's analysis. *See* Dkt. No. 53 ("Pl. Mot.") at 3 n.1; Dkt. No. 64 ("Def. Mot.") at 3.

The promised coverage encompasses "bodily injury" and "property damage" only if, in relevant part, the "bodily injury" or "property damage" is caused by an "occurrence." *Id.* ¶ 1(b)(1). "Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including mental anguish or death resulting from any of these at any time." Section V ¶ 5. "Property damage" is defined as (1) "[p]hysical injury to tangible property, including all resulting loss of use of that property," or (2) "[l]oss of use of tangible property that is not physically injured." *Id.* ¶ 20. "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* ¶ 16.

The Policy contains several exclusions. Relevant here, Exclusion (k) removes from coverage "'[p]roperty damage' to 'your product' arising out of it or any part of it." *Id.* ¶ 2(k). "Your product" is defined as "[a]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by . . . You," and includes "[w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your product.'" Section V ¶ 24.

Additionally, Exclusion (m) removes from coverage "'[p]roperty damage' to . . . property that has not been physically injured, arising out of: (1) A defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work.'" Section I ¶ 2(m). However, "[t]his exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to 'your product' or 'your work' after it has been put to its intended use." *Id.*

### B. Underlying Lawsuit

On August 29, 2014, a number of individual consumers filed an amended class action complaint against Defendants. *Todd v. Tempur Sealy Int'l, Inc.*, No. 3:13-cv-04984-JST (N.D. Cal.) ("Underlying Complt."); *see* Dkt. No. 63. The *Todd* plaintiffs allege that Defendants failed to inform consumers that (1) pillows and mattresses manufactured and sold by Defendants "emit a chemical odor caused by volatile organic compounds ('VOCs') off-gassing from" the products; (2) the odor contains formaldehyde, a known human carcinogen; and (3) exposure to the odor containing formaldehyde can and did trigger serious allergic reactions and asthma attacks in consumers. Underlying Complt. ¶¶ 3, 5, 6, 8.

The Underlying Complaint contains numerous allegations regarding the injuries to person and property suffered by the purchasers of Defendants' products. *See, e.g.*, *id.* ¶¶ 65 ("The noxious and toxic fumes from the mattress caused respiratory distress for me, nasal distress for my husband."), 73 ("I had a severe allergic reaction to my new tempurpedic mattress and ended up in the hospital."), 80 ("The off gassing is so bad it is seeped into everything in the bedroom."), 89 ("My pajamas also smelled of chemicals and all the clothing in my closet."). However, the *Todd* plaintiffs also allege that they "do[] not seek damages for physical injuries." *Id.* ¶¶ 121-31.

"As a result of [their] payment and provision of consideration for a falsely, unfairly, deceptively and misleadingly advertised, marketed, and sold product, [the *Todd* plaintiffs have] suffered a cognizable injury." *Id.* ¶¶ 24-41. Had they known of the material facts that Defendants allegedly omitted or "actively concealed" from consumers, the *Todd* plaintiffs allege that they "would not have purchased [Defendants'] products for the retail price paid." *Id.* ¶¶ 96-113.

The *Todd* plaintiffs assert claims pursuant to various state consumer protection statutes on behalf of themselves and eleven state subclasses (California, Illinois, Massachusetts, Maryland, Missouri, North Carolina, New Jersey, New Mexico, New York, Washington, and Wisconsin). *Id.* ¶¶ 121-31. For example, named plaintiffs Alvin Todd, Melody Todd, and Barbara Warren assert claims under the Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumers Legal Remedies Act ("CLRA") on behalf of the California Class. *Id.* ¶¶ 134-70.

The *Todd* plaintiffs seek injunctive relief, "[a]ll recoverable compensatory and other damages sustained by Plaintiffs," "[a]ctual and/or statutory damages for injuries suffered by Plaintiffs in the maximum amount permitted by applicable law," punitive damages, and "such other and further relief as this Court may deem just and proper." *Id.*, Prayer for Relief.

**C.  This Litigation**

After initially agreeing to defend and paying the legal defense costs for Defendants in the Underlying Lawsuit, Plaintiff informed Defendants on April 11, 2014 that it did not have a duty to defend because the claims asserted in the Underlying Lawsuit were not potentially covered by the Policies. *See* Maynard Decl. Exs. 29-30. Plaintiff filed this action for declaratory judgment on April 10, 2014, seeking a judicial declaration that it has no duty to defend or indemnify with

3

respect to the Underlying Lawsuit. Dkt. No. 1. Plaintiff further seeks reimbursement for costs already paid in defense of Defendants in the Underlying Lawsuit. *Id.* The parties filed cross-motions for summary judgment. Dkt. Nos. 53 ("Pl. Mot."), 64 ("Def. Mot."). A hearing was held on October 8, 2015. Dkt. No. 69.

## II.   DISCUSSION

### A.   Legal Standard

#### 1.   Motion for Summary Judgment

Summary judgment is proper where the pleadings and evidence demonstrate "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material issue of fact is a question a trier of fact must answer to determine the rights of the parties under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears "the initial responsibility of informing the district court of the basis for its motion." *Celotex*, 477 U.S. at 323. To satisfy this burden, the moving party must demonstrate that no genuine issue of material fact exists for trial. *Id.* at 322. To survive a motion for summary judgment, the non-moving party must then show that there are genuine factual issues that can only be resolved by the trier of fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000). To do so, the non-moving party must present specific facts creating a genuine issue of material fact. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324.

The court must review the record as a whole and draw all reasonable inferences in favor of the non-moving party. *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). However, unsupported conjecture or conclusory statements are insufficient to defeat summary judgment. *Id.* Moreover, the court is not required "to scour the record in search of a genuine issue of triable fact," *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citations omitted), but rather "may limit its review to the documents submitted for purposes of summary judgment and those parts of the record specifically referenced therein." *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d

4

1026, 1030 (9th Cir. 2001).

### 2. Duty to Defend

"An insurer has a very broad duty to defend its insured under California law." *Anthem Elecs., Inc. v. Pac. Emp'rs Ins. Co.*, 302 F.3d 1049, 1054 (9th Cir. 2002). According to the California Supreme Court, "the insured is entitled to a defense if the underlying complaint alleges the insured's liability for damages *potentially* covered under the policy, or if the complaint might be amended to give rise to a liability that would be covered under the policy." *Montrose Chem. Corp. v. Super. Court*, 6 Cal. 4th 287, 299 (1993) (emphasis in original). "Even if it is ultimately determined no coverage existed, the insurer [refusing to defend] is liable for defense costs if there was any potential of coverage under the policy during pendency of the action." *Md. Cas. Co. v. Nat'l Am. Ins. Co.*, 48 Cal. App. 4th 1822, 1828 (1996) (brackets in original).

To determine whether the insurer owes a duty to defend, courts first "compare the allegations of the complaint—and facts extrinsic to the complaint—with the policy terms to see if they reveal a possibility that the claim may be covered by the policy." *Pension Tr. Fund for Operating Eng'rs v. Fed. Ins. Co.*, 307 F.3d 944, 949 (9th Cir. 2002) (internal quotation marks omitted). "Under California law, the insurer's duty is not measured by the technical legal cause of action pleaded in the underlying third party complaint, but rather by the *potential* for liability under the policy's coverage as revealed by the *facts* alleged in the complaint or otherwise known to the insurer." *Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264, 1267 (9th Cir. 2010) (internal quotation marks omitted and emphasis in original). "It only matters whether the facts alleged or otherwise known by the insurer suggest potential liability or whether they do not." *Id.* at 1269. "Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor." *Id.* Moreover, "[i]f any of the claims in the underlying complaint are covered, the insurer has a duty to defend the entire action." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The insurer bears a heavy burden to show that it does not have a duty to defend. While the "insured need only show that the underlying claim *may* fall within policy coverage[,] the insurer must prove it *cannot*." *Montrose Chem.*, 6 Cal. 4th at 300. Indeed, "California courts have

repeatedly found that remote facts buried within causes of action that may potentially give rise to coverage are sufficient to invoke the defense duty." *Pension Tr. Fund*, 307 F.3d at 951. "Once the insured makes a showing of potential coverage, the insurer may be relieved of its duty only when the facts alleged in the underlying suit can by no conceivable theory raise a single issue that could bring it within the policy coverage." *Id.* at 949. An insurer's duty to defend can generally be resolved at the summary judgment stage. *Butler v. Clarendon Am. Ins. Co.*, 494 F. Supp. 2d 1112, 1122 (N.D. Cal. 2007).

### B. Analysis

The parties dispute whether the Underlying Complaint alleges "damages because of 'bodily injury' or 'property damage' . . . caused by an 'occurrence.'" Policies Section I ¶ 1.

#### 1. Damages Because of Bodily Injury or Property Damage

The Underlying Complaint contains almost 18 pages of detailed factual allegations describing the bodily injuries and property damage caused by Defendants' defective mattresses. Underlying Complt. ¶¶ 64-94. All of the *Todd* plaintiffs' claims incorporate and derive from these allegations. In other words, if Defendants' defective products had not allegedly caused bodily injury or property damage, then Defendants would not have been able to allegedly misrepresent the products' ability to cause such injuries or damage. On their face, then, the "facts alleged" in the Underlying Complaint clearly demonstrate "the potential for liability under the policy's coverage." *Hudson*, 624 F.3d at 1267 (internal quotation marks and emphases omitted).

Plaintiff argues, however, that it has no duty to defend because the Underlying Complaint does not allege specific *claims* for bodily injury or property damage. In the absence of explicitly pled claims, Plaintiff contends that Ninth Circuit and California authority requires that the otherwise broadly construed duty to defend not extend to "any imaginable amended claim." Dkt. No. 65 ("Pl. Opp.") at 15. The Court disagrees with Plaintiff's reading of this authority.

In *Gray v. Zurich Insurance Co.*, the California Supreme Court observed:

> Defendant [insurer] cannot construct a formal fortress of the third party's pleadings and retreat behind its walls. The pleadings are malleable, changeable and amendable. . . . Since modern procedural rules focus on the facts of a case rather than the theory of recovery in the complaint, the duty to defend should be fixed by the facts

6

>which the insurer learns from the complaint, the insured, or other sources. An insurer, therefore, bears a duty to defend its insured whenever it ascertains facts which give rise to the potential for liability under the policy.

65 Cal. 2d 263, 276-77 (1966).

Subsequent decisions have limited the scope of *Gray*, qualifying it

>by the commonsense proposition that "[a]n insured may not trigger the duty to defend by speculating about extraneous 'facts' regarding potential liability or ways in which the third party claimant might amend its complaint at some future date. . . . Thus, the issue[] . . . [is] what facts [the insurer] knew at the time [insureds] tendered the defense of the [underlying] lawsuit, both from the allegations on the face of the third party complaint, and from extrinsic information available to it at the time; and whether those known facts created a potential for coverage under the terms of the [p]olicy."

*Low v. Golden Eagle Ins. Co.*, 99 Cal. App. 4th 109, 113 (2002) (quoting *Gunderson v. Fire Ins. Exch*, 37 Cal. App. 4th 1106, 1114 (1995)); *see also Sony Comput. Entm't Am. Inc. v. Am. Home Assurance Co.*, 532 F.3d 1007, 1020 (9th Cir. 2008) ("California courts have held that no duty to defend attaches where, as here, the third party complaint did not allege the type of damages covered by the policy, and the class representatives explicitly disavowed any interest in the type of damages covered by the policy."); *The Upper Deck Co., LLC v. Fed. Ins. Co.*, 358 F.3d 608, 615-16 (9th Cir. 2004) ("To support a finding of potential liability, the plaintiffs would need to allege *new facts* of bodily injury. Mere speculation that the plaintiffs could or will allege such facts does not give rise to a duty to defend.") (emphasis in original).

But the *Gunderson*, *Low*, *Upper Deck*, and *Sony* cases are all distinguishable from the present one on the same basis: none of the underlying complaints in those cases actually *alleged* detailed facts that would support covered claims for bodily injury or property damage. In *Gunderson*, the complaint "alleged no facts showing a potential for coverage," and "[t]he extrinsic 'facts' regarding potential liability for property damage [came] from speculation about how [the third-party plaintiff] might have (but did not) amend her complaint at some future date." 37 Cal. App. 4th at 1117. In *Low*, the only relevant allegation identified by the California Court of Appeal read: "[P]laintiff . . . has purchased and consumed Metabolife 356 which were [*sic*] manufactured and distributed by the defendants named herein, without disclosure to her that these diet drugs were extremely dangerous to her health." 99 Cal. App. 4th at 112 & n.3. Thus, the underlying

complaint in *Low* did not actually allege that the plaintiff suffered any bodily injury. In *Upper Deck*, the underlying complaint did "not allege sufficient facts to give rise to a claim for bodily injury." 358 F.3d at 615 ("The injuries alleged for the violation of gambling statutes are not for bodily injury, the type or nature of injuries covered by the insurance policy. Rather, the complaint alleges injury to the plaintiffs' business or property . . . ."). The insured "claimed that, although the lawsuit was styled as a RICO suit, it could have been construed or amended to assert damages for personal injury to children as a result of a gambling addiction," *id.* at 610, but the Ninth Circuit found that "an insurer would need to be clairvoyant to read 'addiction' [and related bodily injury] into this underlying complaint," *id.* at 615. Finally, in *Sony*, "the customer complaints of scratches and other damage to discs—which could potentially establish physical damage—were never incorporated into the third party lawsuit." 532 F.3d at 1020-21.

In *Low*, *Gunderson*, *Upper Deck*, and *Sony*, "[t]o support a finding of potential liability, the plaintiffs would need to allege *new facts* of bodily injury." *Upper Deck*, 358 F.3d at 615 (emphasis in original). But here, the Underlying Complaint already includes 18 pages of allegations detailing the factual basis for a potential covered claim. As such, and unlike the cases cited by Plaintiff, this is not a case where the Underlying Complaint fails to allege "the nature and kind of risk or injury covered by the insured's policy." *Upper Deck*, 358 F.3d at 613. Plaintiff cannot protest here that Defendants have "no reasonable expectation of coverage for a type of damage not alleged in the underlying complaint," given the thirty paragraphs of factual allegations in the Underlying Complaint that describe the exact type of bodily injury and property damage covered by the Policies. *Id.* at 614. No clairvoyance is required to see the factual allegations of bodily injury and property damage in the Underlying Complaint.

Plaintiff further argues that the *Todd* plaintiffs' explicit allegations that they "do[] not seek damages for physical injuries," Underlying Complaint ¶¶ 121-31, negates any duty to defend. The Ninth Circuit has recognized that "California courts have held that no duty to defend attaches where . . . the third party complaint did not allege the type of damages covered by the policy, *and* the class representatives explicitly disavowed any interest in the type of damages covered by the policy." *Sony*, 532 F.3d at 1020 (emphasis added). But here, as described above, the Underlying

Complaint *does* allege the type of damages covered by the Policies, making this case distinguishable from *Sony* and the California authority cited therein. The key distinction is that the Underlying Complaint already contains factual allegations sufficient to support a covered claim, revealing a clear potential for liability. *See Hudson Ins. Co.*, 624 F.3d at 1267-68 ("[T]he *Gunderson* line of narrow 'speculation' cases . . . concluded that there was no potential for coverage, not because the complaint did not list a particular legal cause of action, but because the complaint did not allege *any facts* supporting a covered cause of action.") (emphasis in original); *Olympic Club v. Those Interested Underwriters at Lloyd's London*, 991 F.2d 497, 503 (9th Cir. 1993) ("Only amendments that would include new *causes of action* clearly supported by the facts already pled in the complaint may support a finding of potential liability.") (emphasis in original).

The Court is aware of only one other case that has dealt with this specific issue—*i.e.*, whether a complaint that alleges facts supporting a potential claim for bodily injury or property damage but also explicitly disclaims seeking recovery for any damages for physical injury triggers a duty to defend. In that case, the court found in favor of the insured. *See Plantronics, Inc. v. Am. Home Assur. Co.*, No. 07-cv-06038-PSG, 2014 WL 2452577, at *4 (N.D. Cal. May 30, 2014) ("Because allegations in the underlying actions traced covered claims that could be added through amendment, the underl[y]ing complaint[']s amendment to seek damages because of bodily injury was not speculative. Because the insurers were on notice of a possible amendment creating a potential for coverage under the terms of the policy, the insurers were duty-bound to defend [the insured] in the underlying action.") (internal quotation marks omitted).[2] Under such circumstances, the Court agrees that the *Todd* plaintiffs' "purported disavowal of bodily injury claims is not dispositive." *Id.* at *4 n.39 ("The court will not permit the insurer to duck coverage simply because the complainants sought the tactical advantage of bringing their claims through a class action."); *see also Dobrin v. Allstate Ins. Co.*, 897 F. Supp. 442, 444 (C.D. Cal. 1995) ("A mere statement by the complainant that he does not intend to [amend his complaint to assert a

---

[2] In *Plantronics*, the underlying complaint alleged that the plaintiffs "seek damages for economic injury and do not seek damages for any physical injury that may have been sustained by Class members." *Plantronics*, 2014 WL 2452577, at *1.

covered cause of action] is insufficient to establish as a matter of law that such a claim does not exist. Only in the absence of facts supporting such a claim could [the insurer] have relied upon such extrinsic information."); *Montrose*, 6 Cal. 4th at 296 ("[T]he third party plaintiff cannot be the arbiter of coverage.").

Plaintiff further argues that, even if the Underlying Complaint alleges a potential for liability, the Policies' exclusions bar coverage of the asserted claims. First, Plaintiff argues that Exclusion (k) bars coverage of any property damage to Defendants' products—*i.e.*, the mattresses themselves. The Court agrees, but finds that the Underlying Complaint alleges extensive damage to property other than Defendants' products. *See, e.g.*, Underlying Complt. ¶ 89. As a result, Exclusion (k) does not bar coverage. Second, Plaintiff argues that Exclusion (m) bars coverage. The Court finds that this exclusion is also inapplicable, since the Underlying Complaint contains numerous allegations of loss of use of property due to the off-gassing odor produced by the Defendants' products, which injury is explicitly carved out of Exclusion (m). Policies Section I ¶ 2(m).

Finally, even if an express *claim* for bodily injury or property damage were required to demonstrate a potential for liability, the Court is not persuaded that the Underlying Complaint "can by no conceivable theory" be interpreted to seek damages "because of" bodily injury or property damage. *Pension Tr. Fund*, 307 F.3d at 951. Plaintiff does not cite any authority strictly defining the term "because of" to mean "directly stemming from" or "for." Given the ambiguity of the term, and the "general principle that doubts as to meaning must be resolved against the insurer," the Court finds that the Underlying Complaint, as currently pled, "*potentially* seeks damages within the coverage of the policy." *Gray*, 65 Cal. 2d at 269, 275 (emphasis in original).

### C.     Bodily Injury or Property Damage Caused by an Occurrence

Under California law, an occurrence "is simply an unexpected consequence of an insured's act, even if due to negligence or faulty work." *Anthem*, 302 F.3d at 1055 ("[A]ccidents need not crash or clatter; they need only be unexpected consequences, and they may result even from the insured's own negligence."). However, "[a]n intentional act is not an 'accident' within the plain meaning of the word." *Hurley Constr. Co. v. State Farm Fire & Casualty Co.*, 10 Cal. App. 4th

10

533, 539 (1992) (internal quotation marks and citation omitted).  "When an insured intends the acts resulting in the injury or damage, it is not an accident merely because the insured did not intend to cause injury." *Albert v. Mid-Century Ins. Co.*, 236 Cal. App. 4th 1281, 1291 (2015) (internal quotation marks omitted).  But "[a]n accident may exist when any aspect in the causal series of events leading to the injury or damage was unintended by the insured and a matter of fortuity." *Id.* (internal quotation marks omitted).

      Plaintiff argues that it does not have a duty to defend because "all of the causes of action [in the Underlying Lawsuit] rest on the same factual allegations of fraud and deceit." Pl. Mot. at 7.  In essence, according to Plaintiff, the *Todd* plaintiffs allege that Defendants knew their products were harmful, failed to disclose that fact, and misrepresented the safety of the products.  And because fraud and deceit are "necessarily and by definition[] intentional rather than accidental," Plaintiff argues that no "occurrence" occurred and therefore there is no potential for coverage. *Id.* at 6.

      But Plaintiff ignores the causal series of events leading to the damage sustained as a result of Defendants' alleged misrepresentations—*i.e.*, the manufacture and sale of allegedly defective mattresses by Defendants.  Here, as in *Anthem*, the Underlying Complaint does not "provide a reason to think that [the alleged mattress defects] were expected." 302 F.3d at 1051.  This is sufficient to demonstrate potential liability for an occurrence.

      The negligent misrepresentation cases cited by Plaintiff are distinguishable from this case because they did not involve any alleged accidental conduct on the part of the insured in the causal series of events leading to the negligent misrepresentations.  In *Safeco* and *Miller*, the underlying complaints did not allege any potential occurrence because the insured could not possibly have been held liable for injury resulting from property defects that it did not create, in the absence of the alleged misrepresentations.  *See Safeco*, 915 F.2d at 501 (underlying complaint alleged misrepresentations regarding "unstable, shifting and moving earth," "defective and inadequate electrical wiring," "defective plumbing," and "severe water leakage" in the basement, and did not allege that any of those property defects were caused by the insured); *Miller*, 41 Cal. App. 4th at 1148 (noting that the subject of the alleged misrepresentations, the defective plumbing in a home,

11

was "allegedly caused by the negligence of other defendants named in the [underlying complaint]"). Here, although product defect causes of action are not explicitly pled in the Underlying Complaint, there is a potential that such causes of action will be added by future amendment, for the same reasons as described above. Unlike the insureds in *Safeco* and *Miller*, Defendants could potentially be directly liable for injuries resulting from their defective products.

Finally, even though the *Todd* plaintiffs allege that the Defendants knew of the alleged product defects "since at least March of 2007 and possibly earlier," Underlying Complaint ¶ 4, the Policies' coverage began in 2004 and the *Todd* plaintiffs do not limit the scope of the putative classes to any particular time period, *see, e.g.*, *id.* ¶ 121. Therefore, there is a possibility that the Underlying Complaint seeks damages resulting from Defendants' accidental sale of defective mattresses, which is sufficient to constitute a covered "occurrence." *See Anthem*, 302 F.3d at 1056 ("The possibility that the defects were unexpected is enough to trigger the insurers' duty to defend even though the complaint failed to allege an accident."). [3]

### D. Scope of Duty to Defend

In their cross-motion for summary judgment, Defendants represent that Plaintiff refused to pay for defense expenses incurred after the Underlying Complaint was filed and before it was served. Def. Mot. at 25. Defendants contend that Plaintiff must cover those defense expenses because the Policies obligate Plaintiff to defend against any "suit," which is defined as "a civil proceeding" to which the Policies' coverage applies. Section V ¶ 21. Plaintiff does not respond to Defendants' contention in its opposition. Construing the terms of the Policies in favor of Defendants, as it must, the Court finds that Plaintiff's duty to defend incepted upon the filing of the *Todd* lawsuit.

---

[3] Because the Court finds that Plaintiff has a duty to defend Defendants in the underlying lawsuit, Plaintiff's arguments regarding reimbursement are moot.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's motion is DENIED and Defendants' motion is GRANTED. The clerk shall enter judgment in favor of Defendants and close the file. Both parties shall bear their own attorney fees and costs of suit.

**IT IS SO ORDERED.**

Dated: 1/20/2016

                                            HAYWOOD S. GILLIAM, JR.
                                            United States District Judge